UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRELL A. HIXON,

        Plaintiff,

v.                                  Civil Case No. 13-12439
                                   Honorable Linda V. Parker

PATRICK R. DONAHOE,
POSTMASTER GENERAL,
and, JAMES E. TANKSLEY,

        Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff filed this pro se lawsuit against Defendants on June 4, 2013, claiming breach of a settlement agreement and age discrimination and retaliation in violation of Title VII of the Civil Rights of 1964 ("Title VII") and the Age Discrimination and Employment Act ("ADEA"). Defendants are Patrick R. Donahoe in his capacity as Postmaster General of the United States Postal Service and James E. Tanksley, who served as Plaintiff's supervisor during the relevant period of Plaintiff's employment with the United States Postal Service ("Postal Service"). Presently before the Court is Defendants' motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56 on December 1, 2014. Plaintiff filed a response to the motion on December 22, 2014. Finding the

facts and legal arguments sufficiently presented in the parties' pleadings, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f) on January 13, 2015. For the reasons that follow, the Court is granting Defendants' summary judgment motion.

## I. Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To

demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## II.   Factual and Procedural Background

Plaintiff began his employment with the Postal Service as a letter carrier. Between 1995 and 2001, he worked as a supervisor and then an acting manager of the Joyfield and Fenkell stations. (Defs.' Mot., Ex. 7 at 9.) In 2002, Plaintiff became an EAS-17 Operation Program Support Specialist ("OSS") at the Postal Service's Detroit District Office. (*Id*. at 10.) As the OSS, Plaintiff's "primary function was delivery, confirmation, and signature confirmation scanning." (*Id*. at 11.)

The Postal Service evaluates the job performance of EAS employees at the middle and end of the fiscal year. Employees are expected to prepare for the mid-

year reviews and end of the year performance evaluations by documenting their contributions and describing their accomplishments. (Defs.' Mot., Ex. 8 at 4.) Supervisors are expected to conduct mid-year performance reviews, end of the year discussions, and complete the end of the year performance evaluations. (*Id*. at 2.) Employees dissatisfied with their end of the year performance rating may challenge the rating using the Postal Service's "Recourse" process. (*Id*. at 8.)

To process performance evaluations, the Postal Service uses an automated web based computer program referred to as the Performance Evaluation System. Employees and supervisors access performance evaluations on the Postal Service computer network by inputting their user name and password. (Defs.' Mot., Ex. 13.) On April 28, 2010, Plaintiff entered his mid-year accomplishments using the system. (Defs.' Mot., Ex. 9.) On the same date, Kenneth Scott, the acting Operation Support Manager, entered comments about Plaintiff's mid-year performance using the same system. (*Id*.) Scott was Plaintiff's acting supervisor and his mid-year evaluator.

On September 30, 2010, which was the end of Fiscal Year 2010, Defendant Tanksley was the acting operations support manager. (Defs.' Mot., Exs. 10, 13.) End of the year evaluations were due on or before December 8, 2010. (*Id*., Ex. 11.) Under the performance evaluation system, an employee can receive ratings between 1 and 15. As the acting manager, Tanksley could recommend the

following ratings: 1-3 (Non-contributor); 4-9 (Contributor); 10-12 (High Contributor); or 13-15 (Exceptional Contributor). (*Id*. Exs. 9, 12.)

Plaintiff was absent from work on leave from the beginning of October through late December 2010. (Defs.' Mot., Ex. 7 at 39-40.) Plaintiff did not enter his accomplishments in the performance evaluation system for the year end evaluation because he was not there. (*Id*. at 47.) On November 28, 2010, Tanksley entered information on the system indicating that Plaintiffs' end of the year discussion and comment were not held because Plaintiff was on extended leave between October and December. (Defs.' Mot., Ex. 9 at 3.) Apparently this resulted in the system reflecting that Plaintiff received a "zero" rating.

On December 31, 2011, Plaintiff sent an email to the Detroit District Office indicating that he did not receive a performance evaluation for Fiscal Year 2010 and was unable to make entries in the performance evaluation system. (Defs.' Mot., Ex. 12.) When Plaintiff returned to duty at the end of December 2010, he asked Tanksley about his rating. Tanksley told Plaintiff that he did not rate him because he was not there and that Tanksley would look into it. (*Id*., Ex. 7 at 40-41.) The matter was reviewed and, on January 27, 2011, Plaintiff's overall performance rating was change to 7. (*Id*., Exs. 9, 10.)

In the interim, believing that the Postal Service had subjected him to unlawful discrimination, Plaintiff had contacted an Agency Equal Employment

5

Office ("EEO") Counselor to initiate the EEO complaint process. (*See* Defs.' Mot., Ex. 5 at 1.) It is unclear what the specific subject matter of Plaintiff's complaint was. In any event, on December 29, 2010, Plaintiff and the Postal Service entered into a settlement agreement resolving Plaintiff's discrimination claim. (Defs.' Mot., Ex. 1.) The agreement stated in pertinent part:

> Counselee withdraws his claim of discrimination.
>
> Management agrees that Counselee will continue his role as an OSS and support the scanning initiative via Field Operations and Counselee will also contribute to the AMS [Address Management System] function.

(*Id.*)

On February 1, 2011, Plaintiff alleged that the settlement agreement had been violated when he was "forced to monitor the CPMS website," instructed not to assist with scanning programs while in the AMS office, and his access to scanning programs had been revoked. (Defs.' Mot., Ex. 2.) Plaintiff further claimed that Tanksley gave him a zero rating on his Fiscal Year 2010 performance evaluation in retaliation for his earlier EEO action. (*Id.*)

On April 6, 2011, the Postal Service issued a Letter of Determination indicating that there was no evidence that the EEO settlement agreement had been breached. (*Id.*, Ex. 3.) Plaintiff appealed the Postal Service's determination to the Equal Employment Opportunity Commission ("EEOC"). (*Id.*, Ex. 4.) On September 12, 2012, the EEOC issued a decision finding that Plaintiff failed to

6

establish that the Postal Service breached the agreement. (*Id.*, Ex. 5 at 2-3.) Plaintiff filed a timely request for reconsideration, which was denied by the EEOC on March 20, 2013. (*Id.*, Ex. 6.)

This lawsuit followed in which Plaintiff claims that the Postal Service breached the settlement agreement of December 29, 2010, and retaliated and discriminated against him on the basis of age with respect to his zero rating.

### III.   Applicable Law and Analysis

Defendants raise three arguments in their summary judgment motion. First they argue that subject matter jurisdiction is lacking with respect to Plaintiffs' breach of settlement agreement claim. Next they argue that Tanksley is not a proper defendant to this action. Finally, they contend that Plaintiff fails to show that he was subjected to age discrimination or retaliation.

#### A.   Plaintiff's Breach of Contract Claim

Plaintiff's breach of contract claim is barred by sovereign immunity. " 'The doctrine of sovereign immunity serves as a bar to suit against the United States unless the government has explicitly waived sovereign immunity. A waiver of sovereign immunity must be clear, express, and unambiguous; it cannot be implied from vague language.' " *Taylor v. Geithner*, 703 F.3d 328, 333 (6th Cir. 2013) quoting *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1325 (6th Cir. 1993)) (internal citations and quotation marks omitted in *Taylor*); *see also Lane v. Pena*,

7

518 U.S. 187, 192 (1996).  Several Circuits, including the Sixth Circuit Court of Appeals, have held that Title VII and the ADEA do not waive the government's sovereign immunity for claims alleging that a federal agency breached an EEO agreement.  *Taylor v. Geithner*, 703 F.3d at 335; *Munor v. Mabus*, 630 F.3d 856, 860-61 (9th Cir. 2010); *Lindstrom v. United States*, 510 F.3d 1191, 1195 (10th Cir. 2007); *see also Frahm v. United States*, 492 U.S. 258, 262 (4th Cir. 2007) (concluding that Title VII's statutory waiver of sovereign immunity does not extend to monetary claims against the federal government for a breach of a settlement agreement).

The Court therefore is granting Defendants' motion to dismiss Plaintiff's breach-of-settlement agreement claim for lack of subject matter jurisdiction.

### B.     Claims Against Tanksley

Plaintiff is suing Tanksley, his supervisor, for discrimination and retaliation in violation of Title VII and the ADEA.  Tanksley is not a proper defendant with respect to those claims, however.

Title VII provides that "the head of the department, agency, or unit, as appropriate, shall be the defendant" in a civil action brought by federal employees to enforce their rights against employment discrimination.  42 U.S.C. § 2000e-16(c).  The ADEA relies on § 2000e-16(c) to identify the proper defendant in an age discrimination suit.  *See Romain v. Shear*, 799 F.2d 1416, 1418 (9th Cir. 1986),

*cert. denied*, 481 U.S. 1050 (1987); *Ellis v. United States Postal Service*, 784 F.2d 835, 838 (7th Cir. 1986); *Honeycutt v. Long*, 861 F.2d 1346, 1349 (5th Cir. 1988); *Williams v. Bolger*, No. 88-1534, 1998 WL 105284, at *1 (4th Cir. Sept. 26, 1988). Thus the Postmaster General is the only properly named defendant with respect to Plaintiff's discrimination and retaliation claims. *See Quillen v. United States Postal Service*, 564 F. Supp. 314 (E.D. Mich. 1983) (citing cases and holding that the Postmaster General was the only proper defendant in postal service employee's employment discrimination lawsuit).

The Court therefore is granting summary judgment to Tanksley with respect to Plaintiff's claims against him.

### C. Discrimination and Retaliation Claims Against the Postmaster General

As the Court lacks subject matter jurisdiction with respect to Plaintiff's breach-of-settlement agreement claim, the question is whether he can establish his discrimination and retaliation claims based on the zero rating he received in December 2010. Defendants contend that summary judgment is warranted with respect to Plaintiff's claims because he cannot establish a prima facie case under Title VII or the ADEA based on that conduct.

In order to establish a prima facie case of age discrimination under the ADEA, "a plaintiff must show: (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4)

9

circumstances that support an inference of discrimination." *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). A prima facie case of retaliation under Title VII or the ADEA requires proof by the plaintiff that: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (internal quotation marks and citation omitted) (Title VII); *Aldrich v. Rural Health Servs. Consortium, Inc.*, 579 F. App'x 335, 337 (6th Cir. 2014) (ADEA). Defendants maintain that Plaintiff lacks evidence of "an adverse employment action."

This element does not have the same meaning in the context of an ADEA discrimination claim and a retaliation claim under Title VII or the ADEA. *Laster*, 746 F.3d at 719 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) and *Michael Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007)). As the Sixth Circuit summarized in *Laster*, the term has the following meaning in the context of a discrimination claim:

> In the context of a Title VII discrimination claim, an adverse employment action is defined as a "materially adverse change in the terms or conditions" of employment. *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

10

> responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998). Adverse employment action "requires an official act of the enterprise, a company act. The decision in most cases is documented in official company records, and may be subject to review by higher level supervisors." *Id.* at 762, 118 S. Ct. 2257. In addition, it typically "inflicts direct economic harm." *Id.*

*Laster*, 746 F.3d at 727. Plaintiff has not identified a materially adverse change in the conditions of his employment as a result of his temporary Fiscal Year 2010 zero performance rating.

In the context of a retaliation claim, the adverse action element is satisfied if the plaintiff shows "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Laster*, 746 F.3d at 731 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)); *White*, 548 U.S. at 68. The Supreme Court explained in *White* that the purpose of Title VII's anti-retaliation provisions is to prohibit "employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers," and "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." 548 U.S. at 68-69 (citation and internal quotation marks omitted). The Court further explained that it purposely phrased the standard in general terms "because the significance of any given act of retaliation will often depend on the particular

circumstances." *Id*. Thus, for example, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." *Id*. Similarly, a "supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." *Id*. (citing 2 EEOC 1998 Manual § 8, p 8-14.)

The Sixth Circuit considered whether changes to a plaintiff's performance evaluations constituted an adverse action in *Halfacre v. Home Depot, U.S.A., Inc.*, 221 F. App'x 424 (2007). In that case, the plaintiff's evaluations changed significantly after he filed an EEOC discrimination charge. *Id*. at 432. Before filing the charge, his "evaluations were generally stellar", ranking in the highest of four levels. *Id*. After filing the charge, however, his rankings dropped to the third and second levels. The Sixth Circuit rejected the defendant's contention that these "negative evaluations comments and scores are nothing more than constructive criticism" *if* they "significantly impact an employee's wages or professional advancement[.]" *Id*. at 433. There was evidence that the plaintiff would have received a higher pay raise than the one he received if his rankings had not dropped and that "one of the evaluations' main purposes is to establish promotion

12

potential[.]" *Id*. The court remanded the matter to the district court to fully develop the evidence relevant to assessing whether the lower evaluations "*actually impacted* [the plaintiff's] wages or promotion potential." *Id*. (emphasis in original).

In a subsequent decision relying on *Halfacre*, the Sixth Circuit held that the defendant's bad employment evaluations of the plaintiff, in addition to its denial of her request for a lateral transfer and imposition of cataloguing quotas, did not constitute adverse employment actions in retaliation for the plaintiff's filing of EEOC charges. *James v. Metro. Gov't of Nashville*, 243 F. App'x 74, 79 (6th Cir. 2007). The court relied on the fact that "none of these things [the plaintiff] complained about significantly affected her professional advancement. [The plaintiff] continued to work and she received the same pay . . .." *Id*. In short, the court found that the plaintiff's "employment conditions were essentially unchanged after she filed with the EEOC." *Id*.

In the present case, like *James*, there is no evidence suggesting that an employee's end-of-year performance evaluation has any impact on his or her employment conditions. Plaintiff in fact testified that he usually did not "pay any attention to the ratings and numbers" on his performance evaluations. (Defs.' Mot., Ex. 7 at 87.) Moreover, there is no evidence offered as to what Plaintiff's ratings were before he filed his EEO complaint. When asked at his deposition,

13

Plaintiff was unable to recall what his fiscal year ratings were in 2007, 2008, or 2009. (*Id*. at 86.)

Even if Plaintiff established that the performance rating constituted an adverse employment action and satisfied the elements of his prima facie case, Defendants have articulated a legitimate non-retaliatory reason for the zero performance rating. The undisputed evidence establishes that Plaintiff was not present at work between October and December 2010. In an affidavit submitted in support of Defendants' motion, Tanksley explains that Plaintiff's absence was the only reason he did not evaluate him. (Defs.' Mot., Ex. 13 ¶ 13.) Tanksley attests that "[i]t is [his] understanding per Human Resources policy that if an employee is not available we are not to rate their performance." (*Id*. ¶ 12.) Plaintiff fails to present evidence to suggest that this reason was a pretext for retaliation.

For the above reasons, the Court concludes that Plaintiff cannot prevail on his discrimination or retaliation claims under Title VII or the ADEA.

Accordingly,

**IT IS ORDERED**, that Defendants' motion for summary judgment is **GRANTED**.

                                       s/ Linda V. Parker
                                       LINDA V. PARKER
                                       U.S. DISTRICT JUDGE

Dated: May 19, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 19, 2015, by electronic and/or U.S. First Class mail.

                                                s/ Richard Loury
                                                Case Manager